

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

BRANELL HARRIS, )
)
Plaintiff, )
)
v. ) Civil Action No. 1:10-cv-1431
)
RESTON HOSPITAL CENTER, LLC, )
)
Defendant. )

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Reston Hospital Center, LLC's Motion for Summary Judgment.

Plaintiff Branell Harris filed this action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213, as amended by the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3353. Plaintiff's Amended Complaint alleges that Defendant Reston Hospital Center, LLC ("Reston Hospital") perceived Plaintiff as having a disability of either alcohol or drug addiction and illegally terminated her employment based on that perception.

Plaintiff began working as a Registered Nurse at Reston Hospital in 2002. As a Registered Nurse, Plaintiff provided direct care to patients recovering from surgery and was responsible for administering medications and narcotics to

patients. Plaintiff typically worked from 3 p.m. until 11:00 p.m.

In 2003, Plaintiff attempted suicide on two occasions by overdosing on medication. Plaintiff diverted one of these particular medications, Dilaudid, from Reston Hospital. As a result of Plaintiff's diversion of Dilaudid, Plaintiff submitted to Virginia's Health Practitioners Intervention Program ("HPIP") in 2003 as an alternative to discipline and as a requirement for keeping her nursing license in though the Commonwealth of Virginia. Nancy Susco, Plaintiff's supervisor at Reston Hospital, served as an on-site monitor for the program. In this role, Ms. Susco submitted periodic reports to HPIP regarding Plaintiff's work performance.

Plaintiff signed a contract, which provided for random drug screenings and required Plaintiff "to abstain completely from alcohol, marijuana, stimulants, cocaine, narcotics, sedatives, tranquilizers, and all other potentially addicting or mind-altering medications or drugs." Plaintiff was also prohibited from taking Ambien and other sleep aids during her participation in the program.

Plaintiff took an approved leave of absence from Reston Hospital to seek treatment through HPIP for approximately six months beginning in June 2003. The original length of Plaintiff's participation in HPIP was to be five years.

However, this period was extended by a year when Plaintiff violated her HPIP contract in 2007 by obtaining a prescription for Lunesta, which is a sedative in the same family as Ambien. Reston Hospital did not discipline Plaintiff as a result of this event. Plaintiff took an approved leave of absence between August and November 2007 relating to treatment through the HPIP program and completed the HPIP program in June 2009.

On four occasions in 2008, Plaintiff made errors, or "medication occurrences," in administering medication to patients. The first error took place on April 30, 2008, when a patient was to receive a dose of medication at 11:00 a.m. However, the patient did not receive the dose until 10:00 p.m. The second error occurred on August 12, 2008, when Plaintiff failed to notice that a pharmacy did not order a patient's medication. The third error occurred on October 18, 2008, when one of Plaintiff's patients was to receive a medication dose by mouth. However, the patient received the dose intravenously. The fourth error occurred on October 21, 2008, when one of Plaintiff's patients was given twice as much medication as the physician ordered. According to Ms. Susco, it is rare for nurses on the surgical unit to make more than one or two medication errors in a given year.

Ms. Susco met with Plaintiff annually to discuss her performance during the past year. Plaintiff received counseling

on at least three occasions that she needed to be more consistent in helping her peers. Plaintiff's 2007, 2008, and 2009 performance evaluations all reference her need to improve her interactions with her peers. In Plaintiff's June 5, 2009 performance evaluation, Plaintiff received a 2.5 out of 5.0 points in Teamwork/Cooperation and a note that she "is inconsistent in helping her peers." Plaintiff also received a rating of 2.0 in Judgment/Decision Making. A rating of 2.0 indicates that an employee's performance is below expectations but improving. A rating of 2.0 for Judgment/Decision Making indicates that an employee "[r]equires close supervision to solve many routine problems. Occasionally does not do a thorough or correct analysis of situations. Frequently needs assistance in deciding appropriate course of action. Trouble accepting responsibility for consequences of actions." Plaintiff admits that she did not administer medication with 100 percent accuracy and does not have any facts to show that she assisted her peers.

According to Reston Hospital policy, when a staff member fails to show up for work and fails to inform the hospital of the unscheduled absence -- a "No Call/No Show" -- that staff member will receive a three-day suspension. Plaintiff was aware of this policy. On August 4, 2009, Plaintiff fell, injured her knee and hit her head before noon. Plaintiff asserts that she

was knocked unconscious from this fall. Plaintiff got up from the fall, proceeded to her car, and was later seen driving on the wrong side of the road. An ambulance was called and transported Plaintiff to Inova Loudoun Hospital ("Loudoun Hospital"), to which she was admitted overnight. Loudoun Hospital ran a CT scan on Plaintiff's head on the afternoon of August 4, 2009, and the result of the scan was normal. Plaintiff did, however, test positive for benzodiazepines -- a class of drug commonly used to treat anxiety, seizures, insomnia, and depression -- on that day. Neither Loudoun Hospital nor Plaintiff's primary care physician definitely diagnosed Plaintiff as having a concussion. Plaintiff was, however, awake on August 4 while at the hospital.

In Plaintiff's discharge instructions from Loudoun Hospital, Plaintiff was instructed to make a follow-up doctor's appointment "to discuss your mental health, diabetes and use of Klonipin [sic]," which Plaintiff had on September 15, 2009, several weeks after her termination. On the morning of August 5, Ms. Susco called Plaintiff and informed her that she was receiving a three-day suspension for not calling in or working her shift as scheduled.

Plaintiff arrived for work on August 11, 2009, the first scheduled day following her suspension, and Plaintiff did not submit any work restrictions from a physician. Soon after

Plaintiff arrived at work, several of Plaintiff's coworkers observed that Plaintiff appeared impaired. Reston Hospital has a policy prohibiting alcohol and drug use in the workplace.

Choon "Tina" Kim, a Registered Nurse who had worked with Plaintiff on the surgical unit for thirty years, noticed that Plaintiff was acting strangely when Ms. Kim provided reports on their shared patients. Ms. Kim noticed that Plaintiff was not responding appropriately to questions and was slurring her words. Additionally, Plaintiff stared at a piece of paper in her hand rather than writing down all of the patient information. Approximately twenty minutes after giving Plaintiff the report, Ms. Kim noticed Plaintiff staring at a computer monitor with a screensaver displayed for several minutes. Concerned that something was wrong, Ms. Kim told Ms. Hannon that she should check on Plaintiff because Plaintiff was acting strangely.

Alisa Rooney, another longstanding Registered Nurse on the surgical unit, also observed that something was wrong with Plaintiff. Ms. Rooney observed that Plaintiff was slow to respond to questions, that Plaintiff was standing near the nurses' station appearing lost, and that Plaintiff was not responding to at least two patient calls for assistance. Ms. Rooney approached Plaintiff and offered to administer medication

to one of Plaintiff's patients and then approached Ms. Hannon and expressed her concerns about Plaintiff's behavior.

Ms. Hannon called Ms. Susco, who was at an offsite meeting, and then escorted Plaintiff to Human Resources. Plaintiff testified that Ms. Hannon told her "[Y]ou're drunk and I'm taking you off the floor." Ms. Susco testified that she instructed Ms. Hannon to remove Plaintiff from the surgical unit and then called Gina Gerard, Manager of Human Resources, to inform her about Plaintiff's behavior. Ms. Susco has described that Plaintiff "appeared impaired. She couldn't keep her eyes open. She was slumping over. Her speech was slow and slurred." Plaintiff admitted that she drank two glasses of wine in the twenty-four hours before her August 11, 2009 shift. Additionally, Plaintiff admitted that she felt woozy and disoriented soon after she began her shift. Plaintiff testified that she felt "waves" of disorientation and attributed these "waves" as to why she has no recollections of some portions of her shift while having clear recollections of certain conversations during other portions of her shift.

Plaintiff then met with Ms. Susco and Ms. Gerard in Reston Hospital's Human Resources office. Annette Reichenbaugh, Director of Pharmacy, and Cindy Eller, Nursing Supervisor, were also present during portions of the meeting. Ms. Reichenbaugh performed an investigation to determine whether Pplaintiff had

administered medication to patients.  The investigation revealed that Plaintiff had in fact given several medications to patients at the beginning of her shift that day and that Ms. Rooney had physically administered medication to a patient that Plaintiff checked out of the system.  During this meeting, Plaintiff signed a drug test consent form and admitted that she was taking Cymbalta, Clonazepam (Klonopin), Ambien, Tylenol, and Methotrexate.

Although Plaintiff fell asleep while the phlebotomists were administering the drug test, Reston Hospital was able to obtain enough blood to send to Quest Diagnostics, the outside laboratory that Reston Hospital used for its employee drug screening.  The test results were negative for narcotics and alcohol.  However, Ms. Gerard and Ms. Susco decided that given Plaintiff's inability to perform the essential functions of her job and safely treat patients on August 11, termination of her employment was warranted.  Ms. Susco testified that she also took into account Plaintiff's past disciplinary and performance record in making the decision to terminate Plaintiff's employment.  These additional considerations included Plaintiff's interactions with her peers, medication occurrences, and recent No Call/No Show.

This Court must grant summary judgment when a party fails to make a showing sufficient to establish the existence of any

essential element of the party's case on which that party has the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). A movant need only show that there is an absence of evidence or support for the opposing party's case. See Celotex Corp., 477 U.S. at 325. If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the Court will grant summary judgment "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 324-25); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citing Felty, 818 F.2d at 1128).

The ADA, as amended by the ADAAA, prohibits an employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to" matters that include "the hiring, advancement or discharge of employees." 42 U.S.C. § 12112(a) (2011). A "disability" is defined as: (a) a physical or mental impairment that substantially limits one or more of the major life

activities of an individual; (b) a record of such impairment; or (c) being regarded as having such an impairment. Id. § 12102(2).

In this case, Plaintiff argues that Reston Hospital discriminated against her based on a perceived disability in violation of the ADA. In Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Plaintiff also adds that she has a "record" of impairment or disability. However, any such "record" does not appear in the Charge of Discrimination that Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") or her Amended Complaint, nor did Plaintiff assert any such record in her answers to interrogatories or at her deposition. Plaintiff cannot assert a new legal theory for the first time in opposing Defendant's Motion for Summary Judgment because this would amount to a constructive amendment of the Complaint and would unfairly prejudice Defendant. See United States ex rel. DRC, Inc. v. Custer Battles, LLC, 472 F. Supp. 2d 787, 795-96 (E.D. Va. 2007) aff'd, 562 F.3d 295 (4th Cir. 2009); see also Snydor v. Fairfax County, No. 1:10cv934, 2011 U.S. Dist. LEXIS 30224, at *9-10 (E.D. Va. Mar. 23, 2011). Additionally, Plaintiff has failed to exhaust her administrative remedies regarding her claim that Reston Hospital terminated her due to a "record" of impairment. See Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005). Because Plaintiff failed to

raise this claim at the EEOC stage, and because the claim is not "reasonably" related to her "regarded as" claim, Plaintiff cannot assert it for the first time at this stage in the proceedings. Thus, the Court will only consider Plaintiff's claim that she was discriminated against based on a perceived disability in violation of the ADA.

In order to qualify as an individual "being regarded as having an impairment," an individual must establish that he or she has been subjected to a prohibited action because of an actual or perceived physical or mental impairment. 42 U.S.C. § 12102(3)(A). The fact that an employer is aware of an emploee's impairment, without more, is "insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action." Haulbrook v. Michelin N. Am., Inc. 252 F.3d 696, 703 (4th Cir. 2001). Although Congress expressed in its 2008 amendments to the ADA that an employee can suffer prohibited discrimination "because of a . . . perceived . . . impairment whether or not the impairment limits or is perceived to limit a major life activity," the amendment states that the "regarded as" definition of disability "shall not apply to impairments that are transitory and minor." Id.

Under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the employee bears the initial

burden of establishing a prima facie case of discrimination. If the employee satisfies this burden, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer satisfies its burden, the burden shifts back to the employee to prove that the employer reason was pretextual.

To establish a prima facie case, Plaintiff must demonstrate that (1) she was disabled for the purposes of the ADA; (2) she was a qualified individual for the job in question; and (she was terminated under circumstances that raise a reasonable inference of discrimination. McFarland-Peebles v. Commonwealth of Va. Dep't of Motor Vehicles, 352 F.App'x 848, 849 (4th Cir. 2009) (citing EEOC v. Stow-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000)).

The only admissible evidence that Plaintiff presents is a statement by Ms. Gerard and/or Ms. Hannon on August 11, 2009 to Plaintiff stating that "you're drunk" and Plaintiff's belief that Reston Hospital regarded Plaintiff as being disabled in 2009 because she went to a rehab facility for depression and a suicide attempt in 2003.[1] However, regarding the August 11, 2009

---

[1] Plaintiff also cites testimony from her Virginia Employment Commission hearing. However, in Konjevich v. Washing Sys., No. 93-1763, 1994 U.S. LEXIS 6965, at *5-6 (4th Cir. Apr. 4, 1994), the Fourth Circuit stated that "Virginia Code § 60.2-623 (1992) precludes the use of information provided to the Virginia Employment Commission in any judicial or administrative

statement, there is no evidence indicating that Reston Hospital knew or believed that Plaintiff had any problems with alcohol prior to her termination. Further, that statement itself does not demonstrate that Reston Hospital believed that Plaintiff was an alcoholic. Regarding Plaintiff's belief that Reston Hospital regarded her as being disabled, there is no evidence to suggest that Reston Hospital believed that Plaintiff was a drug addict or that Plaintiff had problems with any medications as of August 2009. Plaintiff cannot avoid summary judgment through her unsupported belief, without more, that Reston Hospital perceived her to be a drug addict in 2009 because of her suicide attempt six years prior. See Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

Under the ADA, a "qualified individual" is one who "with or without reasonable accommodation can perform the essential functions of the employment position . . . ." 42 U.S.C. § 12111(8). The Fourth Circuit has held that a Plaintiff's belief that he or she was performing adequately is irrelevant, but rather the relevant perception is that of the decision-maker. See Hawkins v. Pepsico, Inc. 203 F.3d 274, 280 (4th Cir. 2000).

In this case, Plaintiff has not demonstrated that she was performing her job at a level that met Reston Hospital's

---

proceeding." Thus, even if Plaintiff's cited testimony constitutes disputed material facts, which the Court does not find, the Court will not recite that testimony here.

legitimate expectations at the time or her termination in August 2009. Plaintiff had been counseled at least three times since 2007 regarding the need to be more consistent in assisting her peers. Additionally, Plaintiff had been given a written warning in 2008 for four medication occurrences in one year. Plaintiff was suspended for three days for a No Call/No Show on August 4, 2009. Finally, on the day that Plaintiff returned from her suspension, on August 11, 2009, Plaintiff's behavior concerned multiple coworkers. Plaintiff slurred her words, did not respond appropriately to questions, failed to respond to several patient calls for medication, stared blankly at a screensaver on a computer monitor, and had trouble staying awake. Given these reasons, Reston Hospital reasonably determined that Plaintiff was not satisfying its legitimate expectations. As the Fourth Circuit has stated, a court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998). As such, Plaintiff has failed to make a prima facie case for discrimination.

Even if Plaintiff had made a prima facie case, Reston Hospital argues that it terminated Plaintiff's employment for legitimate, nondiscriminatory reasons. As discussed, Reston Hospital terminated Plaintiff's employment because Plaintiff was

unable to perform the essential functions of her job in her impaired state on August 11, 2009. In addition to several coworkers attesting to the fact that Plaintiff appeared impaired, Plaintiff herself admitted to feeling woozy and disoriented on the surgical floor. Additionally, Reston Hospital considered Plaintiff's multiple counselings, written warning, and No Call/No Show in reaching the decision to terminate her employment.

Moreover, Reston Hospital consistently accommodated Plaintiff during her employment. It retained Plaintiff after Plaintiff admitted to violating its policy by diverting Dilaudid from the hospital in 2003; accommodated Plaintiff in 2004 during the months that she could not administer narcotics to patients; and retained Plaintiff after she violated the HPIP program in 2007 for taking Lunesta. In sum, Plaintiff's actions gave Reston Hospital legitimate, nondiscriminatory reasons to terminate Plaintiff's employment, and Plaintiff's claim that Reston Hospital illegally terminated her due to a perceived disability is belied by the fact that Reston Hospital continually accommodated Plaintiff and allowed Plaintiff to maintain her employment.

Finally, Plaintiff has produced no evidence that Ms. Susco, Ms. Gerard, or any other employee of Reston Hospital had any discriminatory intent or that Reston Hospital's reasons for

terminating Plaintiff's employment were pretextual. Morover, Plaintiff has provided no evidence that Plaintiff's inability to perform the essential functions of her job were not Reston's Hospital's legitimate reasons for terminating her employment.

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted. An appropriate order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
March 26, 2012